IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| STEPHEN LAROQUE, ANTHONY CUOMO, JOHN NIX, KLAY NORTHROP, LEE RAYNOR, and KINSTON CITIZENS FOR NON-PARTISAN VOTING,<br><br>          *Plaintiffs*,<br><br>     v.<br><br>ERIC HOLDER, JR. ATTORNEY GENERAL OF THE UNITED STATES,<br><br>          *Defendant.*<br><br>     *and*<br><br>JOSEPH M. TYSON, et al.,<br><br>     *Proposed Defendant-Intervenors* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   No. 1:10-CV-00561-JDB |

MOTION OF PROPOSED DEFENDANT-INTERVENORS JOSEPH M. TYSON, W.J.
BEST, SR., A. OFFORD CARMICHAEL, JR., GEORGE GRAHAM, JULIAN PRIDGEN,
WILLIAM A. COOKE AND NORTH CAROLINA STATE CONFERENCE OF BRANCHES
OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED
PEOPLE TO INTERVENE AS DEFENDANTS

Pursuant to Federal Rules of Civil Procedure 24(a) and 24(b), Joseph M. Tyson, W.J.

Best, Sr., A. Offord Carmichael, Jr., George Graham, Julian Pridgen, William A. Cooke, and

the North Carolina State Conference of Branches of the National Association for the

Advancement of Colored People [collectively "Proposed Defendant-Intervenors"] hereby

move to intervene as Defendants in this action in order to assert positions and arguments

not adequately addressed by other parties. The applicants have a direct interest in the

subject matter of this action and the claims brought by the Plaintiffs. The Proposed

Defendant-Intervenors potentially will be impaired and impeded in the protection of their rights by the disposition of this case.

The Proposed Defendant-Intervenors aver that if intervention is granted they will, among other things: (i) participate in the action on the schedules which will be established for the existing parties; (ii) avoid delays or unnecessary duplication of effort in areas satisfactorily addressed and represented by the existing Defendant, to the extent possible; and (iii) coordinate any pretrial and trial proceedings with the existing Defendant to the extent possible.

As grounds for this motion, and as more fully explained in the memorandum in support of this motion filed herewith, the Proposed Defendant-Intervenors show the court the following:

1.      This action challenges the constitutionality of Section 5 of the Voting Rights Act. The Plaintiffs seek an injunction prohibiting the Attorney General from enforcing Section 5 against Kinston's change to nonpartisan elections and prohibiting the enforcement of Section 5 against Kinston in the future. The complaint alleges that Section 5 unconstitutionally exceeds Congressional authority and that it violates the Fifth, Fourteenth and Fifteenth Amendments to the United States Constitution, as applied by the Attorney General generally and in his specific refusal to permit Kinston's change to nonpartisan elections.

2.      The Proposed Defendant-Intervenors seek to intervene as a matter of right pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure, or, in the alternative, to intervene by permission pursuant to Fed. R. Civ. Proc. Rule 24(b). With regard to intervention as of right, Proposed Defendant-Intervenors claim an interest in the subject of this litigation including the potential loss of effective minority representation, the defense

of allegations that Section 5 of the Voting Rights Act violates the Fifth, Fourteenth and Fifteenth Amendments, and an interest in the upholding of the constitutionality of Section 5 of the Voting Rights Act, a vital tool in protecting minority voting rights.

3.     The Complaint was filed on April 7, 2010.  Pursuant to Fed. R. Civ. P. 12(a)(1)(A)(ii), an answer or other responsive pleading was due on June 14, 2010.  This motion is being filed less than a month after the deadline for filing a responsive pleading. Counsel for the Proposed Defendant-Intervenors can comply with any discovery deadlines set by the Court without causing any delay in the litigation.  Thus, intervention is timely and will not delay or prejudice the adjudication of the rights of the original parties.

4.     Proposed Defendant-Intervenors Tyson, Best, Carmichael, Graham, Pridgen and Cooke are all African-American residents of Kinston, North Carolina.  They are all registered to vote in Kinston.  Proposed Defendant-Intervenor Joseph Tyson is a member of the Kinston city council, although he seeks to intervene in his individual capacity. Proposed Defendant-Intervenor George Graham is the chairman of the Lenoir County Board of County Commissioners, although he seeks to intervene in his individual capacity. Proposed Defendant-Intervenors Tyson, Best, Carmichael, Graham, Pridgen and Cooke consider the Voting Rights Act of 1965 to be an essential piece of federal civil rights legislation that has historically and continues to provide significant protection for their voting rights.  In their experience, Section 5 of the Voting Rights Act is a fundamentally important tool, in Kinston and beyond, to guarantee voting rights protection.

5.     Defendant-Intervenor North Carolina State Conference of Branches of the NAACP ("NC Conference") is a non-partisan, non-profit organization composed of over 100 branches and 20,000 individual members throughout the state of North Carolina.  The NC Conference has members who are citizens, residents and registered voters in each of the

state's 100 counties and in the 40 counties that are covered by Section 5 of the Voting Rights Act. The fundamental mission of the NAACP is the advancement and improvement of the political, educational, social and economic status of minority groups; the elimination of racial prejudice; the publicizing of adverse effects of racial discrimination; and the initiation of lawful action to secure the elimination of racial bias. In furtherance of this mission, the NC Conference advocates to ensure that the interests of the African-American community are represented on local, state and national legislative bodies by representatives who share the community's interests, values and beliefs and who will be accountable to the community. The NC Conference encourages and facilitates non-partisan voter registration drives by its chapters to promote civic participation.

6.    In addition to overcoming historical discrimination against African-American voters in the state, and securing access to the ballot for its members, the NC Conference is also concerned with ensuring that the voting strength of minority voters is not unfairly diluted by election structures that, in the presence of continued racially polarized voting, prevent minority voters from electing representatives of choice. Local NC Conference branches have filed and defended numerous voting rights and redistricting cases under Section 2 of the Voting Rights Act, 42 US.C. §1973 (2007), throughout the state to ensure that minority voters have an equal opportunity to participate in the election process for local governing bodies. In addition, NC NAACP branches have advocated against changes in election methods that would be retrogressive during the preclearance process under Section 5 of the Voting Rights Act, 42 U.S.C. § 1973(c) (2007).

7.    Proposed Defendant-Intervenors have a direct, substantial and legally protectable interest in the subject matter of this litigation. Plaintiffs seek to have invalidated a core provision of the Voting Rights Act—a provision that was just recently reauthorized for 25 years by the United States Congress. That provision offers Proposed

4

Defendant-Intervenors assurance that any voting changes proposed and adopted in Kinston will be subject to review by this Court or by the United States Attorney General to ensure that such changes are not enacted with retrogressive intent or do not create retrogressive consequences for their voting rights. As long as Lenoir County is still covered by Section 5, Proposed Defendant-Intervenors will be able to seek judicial relief from a federal district court to prevent the implementation of any changes affecting voting that have not been precleared or approved by the Attorney General or this Court. Furthermore, Proposed Defendant-Intervenors will know that voting changes not submitted for preclearance are unenforceable.

8.     If Plaintiffs are successful in attacking the constitutionality of Section 5, Proposed Defendant-Intervenors and others in Lenoir County will be forced to bear the burden of bringing litigation on their own in order to protect their voting rights. More generally, if Plaintiffs are successful, invalidation of Section 5 would harm the federally-protected voting rights not only of Proposed Defendant-Intervenors, but of all similarly-situated minority voters in areas covered by Section 5.

9.     The interests of Proposed Defendant-Intervenors may not be adequately represented by the Defendant in light of the nature of the complaint in this action. The Defendant is bound by institutional constraints that are likely to direct its strategy in litigation, including the arguments proffered or the type of evidence presented. Indeed, this Court has recognized that government entities often cannot adequately represent the interests of private parties. *See, e.g., Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986) (granting intervention of a private party seeking to protect its financial interest despite presence of government entity representing general public interest); *see also Natural Resources Defense Council, Inc. v. United States Environmental Protection Agency*, 99 F.R.D. 607, 610 n.5 (D.D.C. 1983) (granting intervention of private industry

party in recognition that EPA representation of public interest might not always coincide with interest of the industry).

10.     The Defendant does not have the same stake in this matter as citizens of a town under the coverage of Section 5—citizens who have and continue to experience discrimination that impedes their ability to fully participate in the political process.   The Defendant does not have the same stake in this matter as an association of African-American and other minority voters across the state that, historically, have experienced voting discrimination which has impaired their ability to participate fully and equally in North Carolina's political process.  The NC Conference has been in the forefront of efforts to reverse decades of discrimination and seek here to defend those gains.

11.     In the alternative, the Proposed Defendant-Intervenors seek to intervene by permission pursuant to Fed. R. Civ. Proc. Rule 24(b) (2) on the grounds that their defense of Section 5, to the extent that it prohibits changes to any voting qualification, prerequisite, standard, practice or procedure have the effect of denying or abridging the right to vote on account of race or color, has issues of law and fact in common with the claims and defenses in this action.

12.     Courts have routinely granted intervention to minority voters in voting rights cases, recognizing the significance of such cases on the exercise of fundamental rights.  *See, e.g., Georgia v. Ashcroft*, 539 U.S. 461, 477 (2003) (upholding D.C. District Court's grant of motion to intervene by private parties on grounds that intervenors' interests were not adequately represented by the existing parties).

13.     Counsel for the Proposed Defendant-Intervenors have conferred with counsel for the partiers in accordance with Local Civil Rule 7(m).  Counsel for the Defendant Attorney General Eric Holder indicated the government does not oppose permissive

intervention in this case by the Proposed Defendant Intervenors.  Plaintiffs' counsel does
not consent to this motion.

14.    Pursuant to Rules 24(c) and 12(b) of the Federal Rules of Civil Procedure,
Proposed Defendant-Intervenors file herewith as their responsive pleading a motion to
dismiss and memorandum in support of that motion.

15.    The grounds for this motion are set forth more fully in the memorandum of
law filed today with this motion.

WHEREFORE the applicants requests that their motion to intervene as Defendant
be granted.

This the 7th day of July, 2010.

Respectfully Submitted,

J. Gerald Hebert
D.C. Bar #447676
Attorney at Law
191 Somerville Street, #405
Alexandria, VA 22304
Telephone: 703-628-4673
E-mail: hebert@voterlaw.com

Anita S. Earls
D.C. Bar #473453
N.C. Bar #15597
Allison J. Riggs
N.C. Bar #40028
Southern Coalition for Social Justice
115 Market Street, Ste. 470
Durham, North Carolina 27701
Telephone: 919-323-3380 ext. 115
Facsimile: 919-323-3942
E-mail: anita@southerncoalition.org
        allison@southerncoalition.org

Laughlin McDonald

7

Meredith Bell-Platts (application pending)
American Civil Liberties Union
   Foundations, Inc.
230 Peachtree Street, NW
Suite 1440
Atlanta, GA 30303-1227
Telephone: 404-523-2721
Facsimile: 404-653-0331
E-mail:  lmcdonald@aclu.org
        mbell@aclu.org

Attorneys for Proposed Defendant-
Intervenors

CERTIFICATE OF SERVICE

I hereby certify that on this day, July 7, 2010, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system which will send notification of such

filing to the following:

Michael A. Carvin
D.C. Bar No. 366784
Noel J. Francisco
D.C. Bar No. 464752
Hashim M. Mooppan
D.C. Bar No. 981758
David J. Strandness
D.C. Bar No. 987194
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113

Michael E. Rosman
D.C. Bar No. 454002
Michelle A. Scott
D.C. Bar No. 489097
Center for Individual Rights
1233 20th Street, N.W., Suite 300
Washington, D.C. 20036
        *Counsel for Plaintiffs*

Richard Dellheim (lead counsel)
Attorney, Voting Rights Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530
        *Counsel for Defendants*

J. Gerald Hebert

9

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEPHEN LAROQUE, ANTHONY CUOMO, JOHN NIX, KLAY NORTHROP, LEE RAYNOR, and KINSTON CITIZENS FOR NON-PARTISAN VOTING,<br><br><div align="center">*Plaintiffs*,</div><br><div align="center">*v.*</div><br>ERIC HOLDER, JR. ATTORNEY GENERAL OF THE UNITED STATES,<br><br><div align="center">*Defendant.*</div><br><div align="center">*and*</div><br>JOSEPH M. TYSON, et al.,<br><br><div align="center">*Proposed Defendant-Intervenors*</div> | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    No. 1:10-CV-00561-JDB<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM IN SUPPORT OF MOTION OF JOSEPH M. TYSON, W.J. BEST, SR., A. OFFORD CARMICHAEL, JR., GEORGE GRAHAM, JULIAN PRIDGEN, WILLIAM A. COOKE AND NORTH CAROLINA STATE CONFERENCE OF BRANCHES OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE TO INTERVENE AS DEFENDANTS

Joseph M. Tyson, W.J. Best, Sr., A. Offord Carmichael, Jr., George Graham, Julian

Pridgen, William A. Cooke, and the North Carolina State Conference of Branches of the

NAACP [collectively "Proposed Defendant-Intervenors"] by and through counsel, have

moved this Court for leave to intervene as a Defendant-Intervenors as a matter of right

under Rule 24(a) of the Federal Rules of Civil Procedure. Alternatively, pursuant to Rule

24(b), Proposed Defendant-Intervenors seek permissive intervention in the above-captioned

action.  Defendant-Intervenors respectfully submit this Memorandum in support of their motion.

## I.  NATURE OF THE CASE

This is a declaratory judgment action alleging that Section 5 of the Voting Rights Act unconstitutionally exceeds Congressional authority and violates the Fifth, Fourteenth and Fifteenth Amendments to the United States Constitution.  Plaintiffs seek an injunction (1) preventing the Attorney General from enforcing Section 5 against Kinston's change to nonpartisan elections and (2) prohibiting the enforcement of Section 5 against Kinston in the future.

The Complaint in this action was filed on April 7, 2010.  The relief that Plaintiffs seek would invalidate a fundamentally important provision of the Voting Rights Act—a provision just recently found still necessary and accordingly reauthorized by Congress. Defendant filed its answer on June 14, 2010.  This motion is being filed less than a month after that responsive pleading.  Counsel for the Proposed Defendant-Intervenors conferred with counsel for the parties in accordance with Local Civil Rule 7(m).  Counsel for the Defendant Attorney General Eric Holder indicated the government does not oppose permissive intervention in this case by the Proposed Defendant Intervenors.  Plaintiffs' counsel does not consent to the motion.

## II. STATEMENT OF FACTS

Voters in Kinston, North Carolina, passed a referendum in November of 2008 to amend the city charter to change the method of electing local officials from partisan to nonpartisan.  Compl. ¶¶ 1, 14-15.  As a city within Lenoir County, Kinston is subject to coverage under Section 5.  *Id.* at ¶ 11.  After passage of the referendum, the City submitted

the proposed change to the Attorney General for review under Section 5. *Id.* at ¶ 16. The Attorney General objected to those proposed changes on August 17, 2009. *Id.* at ¶ 18. In November 2009, the Kinston City Council voted not to pursue administrative reconsideration of that decision or a declaratory judgment from this Court allowing the proposed change. *See* Certified Copy of Minutes from Kinston City Council Meeting of Nov. 16, 2009, at 19 ("Minutes") (attached as Ex. 1 to Memorandum in Support of Defendant's Motion to Dismiss).

Proposed Defendant-Intervenors Tyson, Best, Carmichael, Graham, Pridgen and Cooke are African American residents of Kinston, North Carolina. Proposed Defendant-Intervenor Joseph Tyson is a member of the Kinston city council, and he seeks to intervene in his individual capacity. Proposed Defendant-Intervenor George Graham is the chairman of the Lenoir County Board of County Commissioners, and he also seeks to intervene in his individual capacity. Proposed Defendant-Intervenors Tyson, Best, Carmichael, Graham, Pridgen, and Cooke are all registered to vote in Kinston. They believe that without the protections offered by Section 5 of the Voting Rights Act, their voting rights and ability to gain fair representation will be imperiled.

The NC Conference of Branches of the NAACP ("NC Conference") is a non-partisan, non-profit organization with over 100 active branches throughout the state. Since the passage of the Voting Rights Act of 1965, the NC Conference has sought to ensure its fullest enforcement. On many occasions, the NC Conference or one of its local branches have been parties in litigation brought in North Carolina under Section 2 of the Voting Rights Act, 42 U.S.C. § 1973(c), to challenge at-large election systems and redistricting plans that dilute minority voting strength. *See, e.g., N.A.A.C.P. v. Thomasville,* No. 4:86-291, 2005 WL 3198981 (M.D.N.C. Nov. 2005); *NAACP v. Rowan Board of Education,* 4:91-293-FWB-RAE (M.D.N.C. 1994); *N.A.A.C.P. v. Roanoke Rapids,* 2:91-36-BO (E.D.N.C. 1992); *Montgomery*

3

*Co. Branch of the N.A.A.C.P. v. Montgomery Co. Bd. of Elect.*, 3:90-27 (M.D.N.C. 1990);

*N.A.A.C.P. v. City of Statesville*, 606 F. Supp 569 (W.D.N.C. 1985).   In addition, the NC

Conference has engaged in a variety of public education and community outreach activities

to help assure that minority voters have an equal opportunity to participate in the electoral

process.

The NC Conference has been active in the redistricting process at the state and local

level.  Over the past four decades, individual members and branch representatives have

appeared at numerous public hearings around the state during the legislative redistricting

process to advocate for the creation of majority-minority districts where necessary to afford

minority voters an opportunity to elect their candidates of choice.  On occasion, NC

Conference members have engaged demographers to draw illustrative redistricting plans

demonstrating how best to provide fair representation for minority voters.  Protecting the

rights of minority voters to have an effective role in state and local governments through

their chosen representatives is central to achieving many of the NC Conference's other

goals.  The right to vote is fundamental, and the organization's priorities and activities

reflect this commitment to civic engagement at all levels.

As a final note, elections in North Carolina continue to be characterized by racially

polarized voting.  White bloc voting in many areas is strong enough usually to defeat the

candidates of choice of black voters. *See Oversight Hearing: "The Voting Rights Act: The*

*Continuing Need for Section 5" Before the Constitution Subcomm. of the House Comm. on*

*the Judiciary,* 109th Cong. (2005) (statement of Richard L. Engstrom) *available at*

http://judiciary.house.gov/media/pdfs/engstrom102505.pdf.   Thus, minority representation

on city councils, school boards, county commissions, in the General Assembly, and in the

state's Congressional delegation has generally come only after the creation of single-

member districts that afford minority voters sufficient voting strength to overcome the

4

white bloc vote in the jurisdiction. Chandler Davidson and Bernard Grofman, eds., QUIET REVOLUTION IN THE SOUTH 174 (1994). Proposed Defendant-Intervenors have a direct stake in the continued enforcement of and compliance with Section 5 of the Voting Rights Act.

## III. ARGUMENT

### A. Proposed Defendant-Intervenors Should be Permitted to Intervene as of Right Pursuant to Federal Rule of Civil Procedure 24(a)(2)

Federal Rule of Civil Procedure 24(a)(2) outlines the requirements for intervention as a matter of right and states:

> Upon timely application anyone shall be permitted to intervene in an action: ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Thus, to intervene as of right, an applicant must satisfy the following requirements: (1) the application must be timely; (2) the applicant must have an interest in the subject matter sufficient to merit intervention; (3) the disposition of the case could impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the existing parties to the litigation. Fed. R. Civ. P. 24(a); *See Jones v. Prince George's County*, 348 F.3d 1014, 1017 (D.C. Cir. 2003); *see also Mova Pharm. Corp. v. Shalala, 140 F.3d 1060, 1074 (D.C. Cir. 1998).* The Proposed Defendant-Intervenors satisfy the requirements to intervene as of right pursuant to Fed. R. Civ. P. 24(a)(2).

Federal courts have repeatedly stressed that Rule 24's intervention requirements should be construed liberally in favor of intervention. *See, e.g., Nuesse v. Camp*, 385 F.2d 694, 702-04 (D.C. Cir. 1967) (acknowledging the need for liberal construction of the rules

5

governing intervention as of right); *American Horse Prot. Ass'n., Inc. v. Veneman,* 200 F.R.D. 153, 157 (D.D.C. 2001) (recognizing the interest requirement is "liberal and forgiving"); *Wilderness Society v. Babbitt,* 104 F. Supp. 2d 10 (D.D.C. 2000) (emphasizing liberal approach to intervention). *See also Turn Key Gaming, Inc. v. Oglala Sioux Tribe,* 164 F.3d 1080, 1081 (8th Cir. 1999) (encouraging that doubts be resolved "in favor of the proposed intervenor," when considering intervention under Rule 24).

The Proposed Defendant-Intervenors' motion satisfies Rule 24(a)(2)'s requirements because it is timely, the Proposed Defendant-Intervenors have direct and significant interests in this action that cannot be adequately protected by the current parties to the litigation, and the Proposed Defendant-Intervenors' ability to protect their interest could be impeded depending on the disposition of the litigation. *See American Horse Prot. Ass'n.,* 200 F.R.D. at 157 (D.D.C. 2001).

a. **The Motion of Proposed Defendant-Intervenors to Intervene is Timely**

Timeliness is measured from when the proposed intervener "knew or should have known that any of its rights would be directly affected by the litigation." *Roeder v. Islamic Republic of Iran,* 333 F.3d 228, 233 (D.C.Cir. 2003), *cert. denied,* 542 U.S. 915 (2004). When considering timeliness, courts generally look at the following factors: the applicant's interest in the case, the need for intervention to preserve the applicant's rights, potential prejudice to the existing parties, prejudice to the intervenor if the intervention is not granted, and any unusual circumstances in favor of or opposed to intervention. *See Smoke v. Norton,* 252 F.3d 468, 470-471 (D.C. Cir. 2001) (outlining factors to be considered under timeliness analysis); *Hirshon v. Republic of Bolivia,* 979 F. Supp. 908, 913 n.5 (D.D.C. 1997) (reviewing timeliness factors). Here, Plaintiffs filed their complaint on April 7, 2010. Defendant filed a pleading responsive to the Complaint on June 14, 2010. The Proposed Intervenors' motion plainly satisfies this timeliness standard. The motion is being

6

submitted within four weeks of Defendant's responsive pleading and well before commencement of discovery. Moreover, the Proposed Defendant-Intervenors seek to participate in the case on the same schedule as the other parties. *Cf. Nationwide Mut. Ins. Co. v. Nat'l REO Mgmt., Inc.,* 205 F.R.D. 1, 6 (D.D.C. 2000) (memorandum opinion) (intervention motion six months after filing of action is timely); *Nationwide Wildlife Fed'n v. Burford,* 676 F. Supp. 271 (D.D.C. 1985) (intervention motion three months after filing of suit is timely). Under these circumstances, this motion is timely and granting intervention pursuant to Rule 24(a)(2) would not prejudice the existing parties or alter the Court's discovery or pre-trial schedule.

### b. The Proposed Defendant-Intervenors Have a Direct, Substantial and Legally Protectable Interest in the Claims and Defenses Raised in this Case

The Proposed Defendant-Intervenors seek to intervene in this matter to ensure that Section 5 of the Voting Rights Act remains a valid and enforceable tool in the battle for minority voting rights and that Kinston's method of election does not make it harder for minorities to have an equal opportunity to participate. The standard to determine the sufficiency of intervenors' interest is not stringent, and it "is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Cook v. Boorstin*, 763 F.2d 1462, 1466 (D.C. Cir. 1985) (internal citations omitted). Here, the Proposed Defendant-Intervenors have a direct, substantial, and legally protectable interest in this action.

The individual Proposed Defendant-Intervenors, as African-American residents of Kinston, have a direct and substantial interest in the continued viability of Section 5. They also want to ensure that elections remain partisan because the party primary makes it possible for them to nominate candidates of choice to run for the City Council. Proposed Defendant-

Intervenor NC Conference has a direct and substantial interest in the upholding of Section 5 because it is an association of minority voters across the state who have experienced voting discrimination. If Section 5 were found to be unconstitutional, Proposed Defendant-Intervenors would no longer have the assurance that any potential changes affecting their voting rights would have to be reviewed and precleared by this Court or the Attorney General before being enforced. Without Section 5, Proposed Defendant-Intervenors could face discriminatory voting practices without the defenses created by Section 5. Furthermore, as residents of Kinston, Proposed Defendant-Intervenors are able to observe and speak to the continuing need for the protections of Section 5 in Lenoir County. All of these factors demonstrate the interest that the Proposed Defendant-Intervenors have in the subject matter of this litigation.

As a final matter, in cases involving constitutional challenges to a particular statutory scheme, courts have held that "the interests of those who are governed by those schemes are sufficient to support intervention." *Chiles v. Thornburg,* 865 F.2d 1197, 1214 (11th Cir. 1989) (*quoting* 7C Charles Alan Wright, Arthur Miller and Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE 1908, at 285 (2d ed.1986)). Thus, for all of the reasons outlined, the Proposed Defendant-Intervenors, as citizens with voting rights protected under Section 5 and as an association that represents such citizens, have a legally recognizable interest in this action.

### c. The Outcome of the Litigation May Impair the Ability of Proposed Defendant-Intervenors to Protect Their Rights

What is at stake in this case is the possible permanent invalidation of Section 5 of the Voting Rights Act, and if that occurs, the disposition of this case would irrevocably impair the voting rights of the Proposed Defendant-Intervenors. If Section 5 is found to be unconstitutional, the only protection available to Proposed Defendant-Intervenors will be Section 2, and using that tool will place on them the significant burden of bringing their

own litigation. In an analogous situation, where a jurisdiction seeks to "bail out" or terminate its coverage under Section 5 under Section 4(a)(4), Congress explicitly amended the Voting Rights Act to ensure that "aggrieved persons" have standing to enforce their rights. *See Voting Rights Act Amendments of 1975*, Pub. L. No. 94-73, sec. 401, 89 Stat. 400. The legislative purpose behind such Congressional action reinforces the appropriateness of the proposed intervention in this matter.

### d. Proposed Defendant-Intervenors' Interests May Not Be Adequately Represented by the Present Party

Minority voters living in a jurisdiction covered by Section 5—the very target of Plaintiff's Complaint—will undoubtedly bring to this litigation a "[l]ocal perspective on the current and historical facts at issue" with which this Court would otherwise not be presented and which would assist the Court's understanding of the claims. *See Sandusky County Democratic Party v. Blackwell*, 387 F.3d 565 (6th Cir. 2004) (granting voters' motion to intervene in HAVA suit); *Commack Self-Service Kosher Meats, Inc. v. Rubin,* 170 F.R.D. 93 (E.D.N.Y. 1996) (commenting on the different perspective intervenors would bring to the case that might assist court). In meeting this prong of the intervention analysis, Proposed Defendant-Intervenors have only the "minimal" burden of showing that the representation of their interests by existing parties could be inadequate. *Trbovich v. United Mine Workers of America,* 404 U.S. 528, 538 n. 10 (1972).

While the present Defendant's obligation is to represent the broad interests of the United States, the Proposed Defendant-Intervenors represent specifically their own personal interests as African-American voters living in Kinston. The Defendant—the Attorney General of the United States charged with enforcing the Voting Rights Act, and, more specifically, Section 5—does not have the same stake in this case as do Proposed Defendant-Intervenors—minority voters and the intended beneficiaries of the Voting Rights

9

Act. In fact, courts have frequently found that government entities cannot adequately represent the interests of private parties. *See Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986); *Friends of Animals v. Kempthorne*, 452 F. Supp. 2d. 64, 70 (D.D. C. 2006). Significantly, agreement on the constitutionality or lawfulness of a statute does not imply that Proposed Defendant-Intervenors and the Attorney General would agree on all grounds. *Natural Resources Defense Council v. Costle*, 561 F.2d 904, 912 (D.C. Cir. 1977). Although Defendants would likely take the concerns of minority voters into account, the cases cited above make clear that the interests of intended beneficiaries, here minority voters, and the government entity responsible for enforcing the statutes designed to protect them, are not coextensive. This divergence often affects the course of litigation.

### B. In the Alternative, Permissive Intervention is Appropriate in this Case.

Rule 24(b) of the Federal Rules of Civil Procedure sets forth an alternative basis for the Proposed Defendant-Intervenors' intervention in this action. Rule 24(b) directs that permissive intervention may be granted "when an applicant's claim or defense and the main action have a question of law or fact in common." Fed. R. Civ. P. 24(b)(2). "[W]hether the intervention will unduly delay or prejudice the existing parties" is the primary consideration when deciding upon permissive intervention. *Commack Self-Service Kosher Meats,* 170 F.R.D. at 106. Courts have not interpreted this provision narrowly. *Nuesse*, 385 F.2d at 704. The court is to consider, in deciding upon permissive intervention, whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties, and that decision is well within the discretion of the court. Fed. R. Civ. P. 24(b)(2). *Huron Envt'l. Activist League v. United States Envt'l. Protection Agency,* 917 F. Supp. 34, 43 (D.D.C. 1996) (permissive intervention was allowed where plaintiffs' claims have both questions of law and fact in common with the main action and the court

10

concluded that the intervention would not unduly delay the adjudication of the rights of the original parties).

Given the unique and important perspectives of the Proposed Defendant-Intervenors with respect to the experience of minority voters in Kinston, North Carolina, their intervention in this matter would very likely enhance the Court's understanding of the underlying legal and factual issues and promote an efficient resolution of this action.  The defenses and claims presented by the Proposed Defendant-Intervenors will have common questions of law and fact as the Complaint.  Intervention will not delay the litigation, as the action has just commenced and the Proposed Defendant-Intervenors have averred that they will participate on the same schedule that will be established for the existing parties. In all, these factors clearly establish the propriety of permissive intervention in this case.  Should the Court decline to grant intervention as of right, it should grant this request for permissive intervention.

### C.  As a General Matter, Courts Recognize the Particular Significance of Rule 24 Intervention in Voting Rights Cases

Intervention in voting rights cases by those representing the interests of African-American and other minority voters is often appropriate, because the interests of the intended beneficiaries of the VRA will likely add necessary perspectives and arguments to legal proceedings involving interpretations of the Act.  It is also appropriate because those interests may differ from the positions of institutional parties such as the Attorney General. Indeed, courts have granted intervention in a broad range of voting rights matters including declaratory judgment actions, Section 2 vote dilution cases, and matters challenging the constitutionality of Section 5 of the Voting Rights Act, 42 U.S.C. 1973c. *See, e.g., Georgia v. Ashcroft*, 539 U.S. 461, 477 (2003) (upholding D.C. District Court's grant to private parties' motion to intervene on grounds that intervenors' interests were not

11

adequately represented by the existing parties and finding generally that private parties may intervene in Section 5 declaratory judgment actions if the requirements of Rule 24 are satisfied); *Bossier Parish Sch. Bd. v. Reno*, 157 F.R.D. 133 (D.D.C. 1994) (permitting intervention by African-American voters from Texas in Section 5 declaratory judgment action); *City of Lockhart v. United States*, 460 U.S. 125, 129 (1983) (acknowledging intervention of Hispanic voters); *County Council of Sumter County v. United States*, 555 F. Supp. 694, 697 (D.D.C. 1983) (permitting intervention by African-American voters in Section 5 declaratory judgment action); *Busbee v. Smith*, 549 F. Supp. 494 (D.D.C. 1982) (acknowledging intervention of African American voters in Section 5 declaratory judgment action), *aff'd* 459 U.S. 1166 (1983).

District courts have also regularly permitted intervention in other voting rights cases, including those in which the United States or other governmental entity has been a party. *See, e.g., Shaw v. Hunt*, 861 F. Supp 408, 420 (E.D.N.C. 1994); *Vera v. Richards*, 861 F. Supp. 1304, 1310 (S.D.Tex. 1994); *Miller v. Johnson*, 515 U.S. 900, 909 (1995); *Abrams v. Johnson*, 117 S. Ct. 1925, 1930 (1997); *see also Meek v. Metropolitan Dade County,* 985 F.2d 1471, 1474 (11th Cir. 1993). For example, in *Miller v. Blackwell*, 348 F. Supp. 2d 916 (S.D. Ohio 2004), the court permitted intervention in a suit arising under the National Voter Registration Act after determining that claimants' interest in avoiding dilution of their votes was different from the interests of state election officials, thus, reducing likelihood that those officials could adequately represent interests of the intervenors. Voters in Kinston whose right to vote historically was abridged by the use of literacy tests, voter suppression tactics and intimidation have a strong interest in protecting their ability to elect candidates of their choice and have an interest in their voices being heard in this litigation.

## IV. CONCLUSION

For the foregoing reasons, the Proposed Defendant-Intervenors respectfully request that the Court grant their Motion to Intervene in this matter under Federal Rule of Civil Procedure 24.

This 7th day of July, 2010.

Respectfully Submitted,

J. Gerald Hebert
D.C. Bar #447676
Attorney at Law
191 Somerville Street, #405
Alexandria, VA 22304
Telephone: 703-628-4673
E-mail: hebert@voterlaw.com

Anita S. Earls
D.C. Bar #473453
N.C. Bar #15597
Allison J. Riggs
N.C. Bar #40028
Southern Coalition for Social Justice
115 Market Street, Ste. 470
Durham, North Carolina 27701
Telephone: 919-323-3380 ext. 115
Facsimile: 919-323-3942
E-mail: anita@southerncoalition.org
        allison@southerncoalition.org

Laughlin McDonald
Meredith Bell-Platts (application pending)
American Civil Liberties Union
    Foundations, Inc.
230 Peachtree Street, NW
Suite 1440
Atlanta, GA 30303-1227
Telephone: 404-523-2721
Facsimile: 404-653-0331
E-mail: lmcdonald@aclu.org
        mbell@aclu.org

Attorneys for Proposed Defendant-
Intervenors

.

## CERTIFICATE OF SERVICE

I hereby certify that on this day, July 7, 2010, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system which will send notification of such

filing to the following:

Michael A. Carvin
D.C. Bar No. 366784
Noel J. Francisco
D.C. Bar No. 464752
Hashim M. Mooppan
D.C. Bar No. 981758
David J. Strandness
D.C. Bar No. 987194
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113

Michael E. Rosman
D.C. Bar No. 454002
Michelle A. Scott
D.C. Bar No. 489097
Center for Individual Rights
1233 20th Street, N.W., Suite 300
Washington, D.C. 20036
    *Counsel for Plaintiffs*

Richard Dellheim (lead counsel)
Attorney, Voting Rights Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530
    *Counsel for Defendants*

J. Gerald Hebert

15