**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

| | |
|---|---|
| STEPHEN LAROQUE, ANTHONY CUOMO, JOHN NIX, KLAY NORTHRUP, LEE RAYNOR, and KINSTON CITIZENS FOR NON-PARTISAN VOTING, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Civ. No.: 1:10-CV-00561-JDB |
| ERIC H. HOLDER, JR. ATTORNEY GENERAL OF THE UNITED STATES | )<br>)<br>)<br>) |
| Defendant. | ) |

_____

**EXHIBIT E: LETTER FROM LORETTA KING, ACTING ASSISTANT ATTORNEY
GENERAL, CIVIL RIGHTS DIVISION, U.S. DEP'T OF JUSTICE,
TO JAMES P. CAULEY III, KINSTON CITY ATTORNEY (AUG. 17, 2009)**

**U.S. Department of Justice**

Civil Rights Division

---

*Office of the Assistant Attorney General*　　　　　　　Washington, D.C. 20530

**AUG 17 2009**

James P. Cauley III, Esq.
Rose Rand Wallace
P.O. Drawer 2367
Wilson, North Carolina 27894-2367

Dear Mr. Cauley:

    This refers to the change to nonpartisan elections, with a plurality-vote requirement, for the City of Kinston in Lenoir County, North Carolina, submitted to the Attorney General pursuant to Section 5 of the Voting Rights Act of 1965, 42 U.S.C. 1973c. We received your response to our June 10, 2009, request for additional information on June 16, 2009; additional information was received on August 4, 2009.

    We have carefully considered the information you have provided, as well as information from other interested parties. Under Section 5, the Attorney General must determine whether the submitting authority has met its burden of showing that the proposed change "neither has the purpose nor will have the effect" of denying or abridging the right to vote on account of race, color or membership in a language minority group. As discussed further below, I cannot conclude that the city has sustained its burden of showing that the proposed changes do not have a retrogressive effect. Therefore, based on the information available to us, I object to the voting changes on behalf of the Attorney General.

    According to the 2000 Census, the City of Kinston has a total population of 23,688 people, of whom 14,837 (62.6%) are African-American. The total voting age population is 17,906, of whom 10,525 (58.8%) are African-American. The American Community Survey for 2005-2007 estimates the total population to be 22,649, of whom 14,967 (66.6%) are African-American. As of October 31, 2008, the city has 14,799 registered voters, of whom 9,556 (64.6%) are African-American.

    Although black persons comprise a majority of the city's registered voters, in three of the past four general municipal elections, African Americans comprised a minority of the electorate on election day; in the fourth, they may have been a slight majority. For that reason, they are viewed as a minority for analytical purposes. Minority turnout is relevant to determining whether a change under Section 5 is retrogressive. *Hale County v. United States,* 496 F.Supp 1206 (D.D.C.).

-2-

Black voters have had limited success in electing candidates of choice during recent municipal elections. The success that they have achieved has resulted from cohesive support for candidates during the Democratic primary (where black voters represent a larger percentage of the electorate), combined with crossover voting by whites in the general election. It is the partisan makeup of the general electorate that results in enough white cross-over to allow the black community to elect a candidate of choice.

This small, but critical, amount of white crossover votes results from the party affiliation of black-preferred candidates, most if not all of whom have been black. Numerous elected municipal and county officials confirm the results of our statistical analyses that a majority of white Democrats support white Republicans over black Democrats in Kinston city elections. At the same time, they also acknowledged that a small group of white Democrats maintain strong party allegiance and will continue to vote along party lines, regardless of the race of the candidate. Many of these white crossover voters are simply using straight-ticket voting. As a result, while the racial identity of the candidate greatly diminishes the supportive effect of the partisan cue, it does not totally eliminate it.

It follows, therefore, that the elimination of party affiliation on the ballot will likely reduce the ability of blacks to elect candidates of choice. Black candidates will likely lose a significant amount of crossover votes due to the high degree of racial polarization present in city elections. Without party loyalty available to counter-balance the consistent trend of racial bloc voting, blacks will face greater difficulty winning general elections. Our analysis of election returns indicates that cross-over voting is greater in partisan general elections than in the closed primaries. Thus, statistical analysis supports the conclusion that given a change to a non-partisan elections, black preferred candidates will receive fewer white cross-over votes.

The change to nonpartisan elections would also likely eliminate the party's campaign support and other assistance that is provided to black candidates because it eliminates the party's role in the election. The party provides forums for black candidates to meet with voters who may otherwise be unreachable without the party's assistance. In addition, the party provides campaign funds to candidates, without which minority candidates may lag behind their white counterparts in campaign spending.

Removing the partisan cue in municipal elections will, in all likelihood, eliminate the single factor that allows black candidates to be elected to office. In Kinston elections, voters base their choice more on the race of a candidate rather than his or her political affiliation, and without either the appeal to party loyalty or the ability to vote a straight ticket, the limited remaining support from white voters for a black Democratic candidate will diminish even more. And given that the city's electorate is overwhelmingly Democratic, while the motivating factor for this change may be partisan, the effect will be strictly racial.

-3-

Under Section 5 of the Voting Rights Act, the submitting authority has the burden of showing that a submitted change has neither a discriminatory purpose nor a discriminatory effect. *Georgia* v. *United States*, 411 U.S. 526 (1973); Procedures for the Administration of Section 5 of the Voting Rights Act of 1965, 28 C.F.R. 51.52. In light of the considerations discussed above, I cannot conclude that your burden has been sustained in this instance. Therefore, on behalf of the Attorney General, I must object to the change to nonpartisan elections, with a plurality vote requirement.

Under Section 5 you have the right to seek a declaratory judgment from the United States District Court for the District of Columbia that the proposed change neither has the purpose nor will have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority group. 28 C.F.R. 51.44. In addition, you may request that the Attorney General reconsider the objection. 28 C.F.R. 51.45. However, unless and until the objection is withdrawn or a judgment from the District of Columbia court is obtained, the change to nonpartisan elections, with a plurality vote requirement, continues to be legally unenforceable. *Clark* v. *Roemer*, 500 U.S. 646 (1991); 28 C.F.R. 51.10.

To enable us to meet our responsibility to enforce the Voting Rights Act, please inform us of the action the city plans to take concerning this matter. If you have any questions, please call Mr. J. Eric Rich (202-305-0107), an attorney in the Voting Section.

                                             Sincerely,

                                             Loretta King
                                             Acting Assistant Attorney General