IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

STEPHEN LAROQUE, ANTHONY CUOMO, )
JOHN NIX, KLAY NORTHRUP, LEE )
RAYNOR, and KINSTON CITIZENS FOR )
NON-PARTISAN VOTING, )
 )
        Plaintiffs, )
 )
        v. )   Civ. No.: 1:10-CV-00561-JDB
 )
ERIC H. HOLDER, JR. )
ATTORNEY GENERAL OF THE )
UNITED STATES )
 )
        Defendant. )
_____

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT-INTERVENORS' MOTION TO DISMISS**

Defendant-intervenors' motion to dismiss largely duplicates the erroneous arguments made in the Government's motion to dismiss. And to the extent the intervenors' motion does differ from the Government's, it primarily makes a host of irrelevant arguments that are based upon mischaracterizations of Plaintiffs' two claims, which are both constitutional challenges to Section 5's nullification of the nonpartisan-elections referendum in Kinston.

    1.    Like the Government before it, the intervenors cite *Morris v. Gressette*, 432 U.S. 491 (1977), and its progeny for the proposition that Plaintiffs cannot seek judicial review of the constitutionality of the Attorney General's Section 5 objection to the referendum. *See* Inter. MTD Memo. (Doc. No. 25) at 3-6. As Plaintiffs previously explained, however, there are two fundamental flaws with this argument. *First*, it is irrelevant, because Plaintiffs are not asking this Court to "review" the Attorney General's *objection* (for its consistency with Section 5 or for any other purpose). This Court need not engage in such "review" in order to afford Plaintiffs full relief. Facially invalidating the Section 5 preclearance *obligation* will nullify the past objection and eliminate the *only* impediment to the City of Kinston's mandatory state-law duty to implement the referendum. *See* Pltfs. MTD Opp. (Doc. No. 12) at

1

36-37.  *Second*, in any event, neither *Morris* nor any other case holds that Section 5 confers a unique *implied immunity* upon the Attorney General to enforce federal law in a manner that violates Plaintiffs' *individual constitutional rights*.  To the contrary, the repeated emphasis in those cases on the *availability* of "traditional constitutional litigation" to remedy the plaintiffs' injuries—thus rendering superfluous any "review" or "appeal" challenging the Attorney General's judgment—makes crystal clear that Section 5 *does not abrogate* the bedrock implied right of action for injunctive and declaratory relief against federal officials like the Attorney General, when their enforcement of federal law is unconstitutional.  *See id.* at 37-40.

Intervenors entirely ignore the first defect in their argument.  As for the second, they observe that Plaintiffs can bring a claim under "Section 2 of the Voting Rights Act" if there are "facts sufficient to show that the partisan method of election for Kinston City Council denies [Plaintiffs] an equal opportunity to participate in the election process because of their race."  *See* Inter. MTD Memo. at 5-6.  But that is a complete non sequitor.  The Section 2 *statutory* claim is distinct and different from the *constitutional* claims that Plaintiffs bring here.  A court considering a Section 2 "results" lawsuit *against Kinston* for its (involuntary) use of partisan elections would not adjudicate either of Plaintiffs' constitutional claims, which instead challenge the *federal government* for *preempting* Kinston's use of nonpartisan elections, in the absence of *authority* under the Reconstruction Amendments and in *violation* of the *Equal Protection* guarantees of the Constitution.  *See* Pltfs. MTD Opp. at 5, 21-23, 32-35.  Thus, even assuming that "reviewing" the Attorney General's objection is needed to resolve the claims here, Plaintiffs' argument that Section 5 does not totally deprive them of judicial redress *for those constitutional claims* is entirely unaffected by the potential existence of a *separate statutory claim* under Section 2.

2.  Intervenors next argue that Plaintiffs lack statutory authority to bring a declaratory judgment action for preclearance under Section 5.  *See* Inter. MTD Memo. at 6-7.  That, however, is entirely irrelevant, because Plaintiffs are *not* arguing that preclearance of the referendum should have been granted *under the Section 5 preclearance standard*. Rather, they are arguing that *subjecting* the

2

referendum to the Section 5 preclearance standard was itself unconstitutional.

Notably, in this regard, Plaintiffs have *never* argued that the Attorney General *erred* in his application of the amended preclearance standard that Congress adopted in 2006. That said, nor have Plaintiffs contended that the Attorney General was *correct*. Intervenors' repeated assertion to the contrary, *see id.* at 1, 3, 13, mischaracterizes Plaintiffs' position. To be perfectly clear, although Plaintiffs do agree with the Attorney General's *interpretation* of the amended preclearance standard as imposing a racial quota that flatly forbids *any* diminution in the ability of a minority group in a covered jurisdiction to elect its preferred candidates, Plaintiffs have taken no position on whether the Attorney General *accurately found* that nonpartisan elections in Kinston would violate that quota. *See* Pltfs. MTD Opp. at 27. The latter question is irrelevant in this case, because Plaintiffs are not seeking preclearance under Section 5 and because the Attorney General's application of Section 5's unconstitutional quota to preempt Kinston's referendum is equally unconstitutional whether or not he correctly found that the referendum ran afoul of the quota. And that is particularly true since Congress lacked the constitutional power to extend the life of Section 5 *at all*, let alone to expand its preclearance standard.

3. Intervenors also argue that, when a federal court (or official) invalidates a jurisdiction's law but that government does not want to appeal the decision, private citizens cannot force the government to appeal. *See* Inter. MTD Memo. at 7-9. That too is irrelevant, because Plaintiffs are not forcing the City of Kinston "to appeal" Section 5's preemption of the nonpartisan-elections referendum. Rather, they are *themselves* directly challenging that unconstitutional federal action. In their opposition to the Government's motion to dismiss, Plaintiffs cited numerous cases where private citizens were likewise permitted to challenge the improper invalidation of state law by a federal actor, despite the state's conscious choice not to separately challenge the invalidation. *See* Pltfs. MTD Opp. at 25-26; *see also Nat'l Wildlife Fed'n v. Lujan*, 928 F.2d 453, 456 n.2 (D.C. Cir. 1991) (holding that private actors could challenge a federal court's invalidation of a federal regulation even though the Secretary of the Interior chose not to appeal).

Intervenors, however, completely ignore those cases, which directly refute their position. And

the cases they cite instead are inapposite. Two of them simply recognize the authority of a government-defendant to *settle* a lawsuit that challenges the validity of its law by *modifying* that law. *See Lawyer v. Dep't of Justice*, 521 U.S. 567, 575-80 (1997); *Brooks v. State Bd. of Elections*, 848 F. Supp. 1548, 1562 (S.D. Ga. 1994). Here, in contrast, the City of Kinston did not adopt partisan elections as part of a legally binding settlement. Rather, the Kinston referendum created a binding state-law obligation to *replace* partisan elections with nonpartisan elections, but Section 5 *nullified* that referendum and the City merely *acquiesced* in that result, no differently than in any of the cases Plaintiffs cited above. As for *Spangler v. Pasadena City Board of Education*, 427 F.2d 1352 (9th Cir. 1970), that case involved the limited question whether parties could *intervene* in order to appeal a federal *court order* that the government-defendant had chosen not to appeal, *see id.* at 1353-55, and thus it does not speak to the ability of Plaintiffs here to bring an *independent* lawsuit challenging the unconstitutional invalidation of local law by a federal *official* enforcing a federal *law*. Moreover, even on its own terms, the forty-year-old decision in *Spangler* does not appear to be good law in the Ninth Circuit, which, like the other federal appellate courts cited by Plaintiffs, has in more recent years routinely allowed private actors to intervene to appeal the invalidation of a state or federal law by a federal district court, notwithstanding the fact that the governmental entity that enacted the law has not appealed the invalidation. *See, e.g.*, *Didrickson v. Dep't of Interior*, 982 F.2d 1332, 1337-39 (9th Cir. 1992) (rejecting the argument of the Secretary of the Interior that private actors could not challenge a federal court's invalidation of a federal regulation because the Secretary had chosen not to appeal); *Yniguez v. Arizona*, 939 F.2d 727, 731-38 (9th Cir. 1991) (holding that private parties could challenge a federal court's invalidation of a state initiative even though the state did not properly appeal), *rev'd on other grounds by Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997).

     4.     The intervenors further contend that "North Carolina law clearly vests the authority to enact new plans of city government … solely with the city council and city officials." *See* Inter. MTD Memo. at 9-10. That contention is yet again irrelevant, for it fundamentally misunderstands both the nature of Plaintiffs' claims and the relevance of North Carolina law. Plaintiffs do not purport to exercise, or ask this Court to exercise, "authority" to "enact [a] new plan[] of city government" in Kinston. *Id.* at 9.

Rather, it was the voters of Kinston that exercised their "authority" to "initiate [and pass] a referendum on [a] proposed charter amendment[]" adopting nonpartisan elections, N.C. Gen. Stat. § 160A-104, and it is the Kinston City Council that now has a mandatory state-law "duty" to implement that duly enacted referendum, *id.* §§ 160A-104, 160A-108.  The *only* reason that Kinston's officials are not complying with that duty is Section 5, and so Plaintiffs are seeking to eliminate that unconstitutional federal barrier because the City's compelled non-compliance with the enacted referendum causes concrete and particularized injury to Plaintiffs.  Intervenors cite no provision of North Carolina law that even remotely purports to foreclose Plaintiffs from seeking redress from such personalized injury by means of a federal lawsuit that would clear the only obstacle preventing the City from complying with its state-law duty.

5.   The intervenors additionally observe that private parties in a covered jurisdiction lack statutory authority to seek "bailout" of the jurisdiction under Section 4.  *See* Inter. MTD Memo. at 10-11.  That, however, is entirely irrelevant, because Plaintiffs are *not* arguing that Kinston is entitled to bailout under the Section 4 bailout test.  Rather, they are arguing that Congress' imposition of the preclearance requirement on Kinston was itself unconstitutional.

6.   Finally, the intervenors contend that Plaintiffs lack Article III injury, but their arguments mostly rehash (some of) the Government's flawed assertions on this front.  In particular, with respect to Plaintiffs' injuries as candidates and voters, the intervenors argue that Plaintiffs lack a "legally cognizable injury" because they "do not have a right to a non-partisan election process under state or federal law" and because Kinston's partisan-election regime does not independently violate the First Amendment.  *See* Inter. MTD Memo. at 12.  But Plaintiffs previously demonstrated how that argument conflates Article III injury with the merits of Plaintiffs' constitutional claims.  *See* Pltfs. MTD Opp. at 8-10.  Similarly, with respect to Plaintiffs' injuries as proponents of the referendum, the intervenors argue that "North Carolina law … does not authorize individual citizens to act in these circumstances."  *See* Inter. MTD Memo. at 10.  But, even assuming that is a correct characterization of North Carolina law, Plaintiffs have already demonstrated that they do not need state-law authorization to have standing in federal court as initiative proponents.  *See* Pltfs. MTD Opp. at 16-20.

Lastly, as for Plaintiffs' injuries based on their right to race-neutral treatment, the intervenors argue that Plaintiffs lack a factual basis for their equal protection claim, because they have not alleged facts showing how electoral conditions in Kinston deny them equal treatment. *See* Inter. MTD Memo. at 12-13. But that wholly misses the point of Plaintiffs' claim, which is that Kinston's nonpartisan-elections referendum was nullified *solely* as a result of the racial quota floor on minority electoral success that Congress adopted in the 2006 amended preclearance standard and that the Justice Department applied when it denied preclearance here. *See* Pltfs. MTD Opp. at 21-23. Plaintiffs' challenge to such race-based electoral decision-making is a far cry from "[t]he type of vague" and "abstract injuries," such as "negative stereotypes" and "perceptions of continuing racism," that this Court held insufficient in *Giles v. Ashcroft*, 193 F. Supp. 2d 258, 263-64 (D.D.C. 2002). To the contrary, the Supreme Court itself has direly warned of the "constitutional concerns" raised by the fact that the amended Section 5 preclearance standard that Congress adopted in 2006—which abrogated prior narrowing constructions that the Court had adopted— requires and permits "considerations of race" to be "predominant" in electoral decision-making. *See Nw. Austin Mun. Util. Dist. No. 1 v. Holder*, 129 S. Ct. 2504, 2512 (2009) (quoting *Georgia v. Ashcroft*, 539 U.S. 461, 491-92 (2003) (Kennedy, J., concurring)).

*   *   *

For the foregoing reasons, the Defendant-intervenors' motion to dismiss should be denied.

September 2, 2010                                    Respectfully submitted,

/s/ Michael A. Carvin
_____
Michael A. Carvin (D.C. Bar No. 366784)
Noel J. Francisco (D.C. Bar No. 464752)
Hashim M. Mooppan (D.C. Bar No. 981758)
David J. Strandness (D.C. Bar No. 987194)
JONES DAY
51 Louisiana Ave. NW
Washington D.C.  20001
(202) 879-3939

Michael E. Rosman (D.C. Bar No. 454002)
Michelle A. Scott (D.C. Bar No. 489097)
CENTER FOR INDIVIDUAL RIGHTS
1233 20th St. NW, Suite 300
Washington D.C.  20036
(202) 833-8400

*Attorneys for Plaintiffs*