# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

STEPHEN LAROQUE, ANTHONY CUOMO, )
JOHN NIX, KLAY NORTHRUP, and KINSTON )
CITIZENS FOR NON-PARTISAN VOTING, )
)
        Plaintiffs, )
)
        v. ) Civ. No.: 1:10-CV-00561-JDB
)
ERIC H. HOLDER, JR. )
ATTORNEY GENERAL OF THE )
UNITED STATES )
)
        Defendant, )
)
        and )
)
JOSEPH M. TYSON, et al., )
)
        Defendant-Intervenors. )
_____

**PLAINTIFFS' BRIEF REGARDING SUGGESTION OF MOOTNESS**

    Michael A. Carvin (D.C. Bar No. 366784)
    Noel J. Francisco (D.C. Bar No. 464752)
    Hashim M. Mooppan (D.C. Bar No. 981758)
    David J. Strandness (D.C. Bar No. 987194)
    JONES DAY
    51 Louisiana Ave. NW
    Washington D.C.  20001
    (202) 879-3939

    Michael E. Rosman (D.C. Bar No. 454002)
    Michelle A. Scott (D.C. Bar No. 489097)
    CENTER FOR INDIVIDUAL RIGHTS
    1233 20th St. NW, Suite 300
    Washington D.C.  20036
    (202) 833-8400

    *Attorneys for Plaintiffs*

Pursuant to this Court's minute order of December 7, 2011, Plaintiffs respectfully submit this brief regarding whether: 1) candidate John Nix won or lost the November 2011 City Council election in Kinston; and 2) whether either Count I or Count II is now moot. The short answer is that Nix lost, but that neither count of the complaint is moot, particularly since Nix intends to run again in 2013.

1. Nix did not prevail in the Kinston City Council election. Running as an unaffiliated candidate for one of three spots, Nix came in fourth place, losing to the three Democratic candidates. *See* Lenoir County Board of Elections, November 8, 2011, Municipal Elections, Official Results, City of Kinston City Council (Nov. 28, 2011), http://results.enr.clarityelections.com/NC/Lenoir/33089/51373/en/summary.html (last visited December 9, 2011) (Exhibit A); Dave Anderson, *Final election results in Lenoir, Greene and Jones counties*, Kinston Free Press (Nov. 20, 2011), http://www.kinston.com/common/printer/view.php?db=kfpress&id=78022 (last visited December 9, 2011) (Exhibit B).

Tellingly, though, these election results illustrate the electoral injury that Section 5 imposed upon Nix by suspending Kinston's nonpartisan-elections referendum. Nix received 1355 votes as an unaffiliated candidate, while his Democratic opponents respectively received 2514 votes, 2329 votes, and 2003 votes. *See id.* Critically, however, his opponents' totals each include 1059 votes that they received due to Democratic straight-ticket party-line voting, which means that two of those candidates' margins of victory over Nix actually depended on the party-line votes. *See id.* To be sure, it is unclear whether Nix actually would have won in a nonpartisan election where his Democratic opponents would not have had the benefit of such partisan voting. But what is certain is that Nix lost in this partisan election when his opponents received their decisive votes through a partisan benefit, and it also can be readily inferred that Nix suffered some competitive disadvantage because of that partisan benefit. This is the precise electoral injury that the D.C. Circuit held conferred standing on Nix in this case (in addition to the ballot-access costs associated with partisan elections). *LaRoque v. Holder*, 650 F.3d 777, 786-87 (D.C. Cir. 2011).

Notably, Nix intends to run for Kinston City Council in 2013. In particular, on November 9, 2011, Nix made the following post-election statement on his publicly accessible campaign webpage:

1

> I want to make it very clear to everyone that my "defeat" November 8 in the Kinston City Council race was not a defeat at all. It was an education into the inequities found in Kinston's partisan electoral system and only allows me to adjust my sights. For the record, I intend to run for Kinston City Council in 2013. Thanks again to all my supporters!

http://www.nixforcouncil.com (last visited December 9, 2011) (Exhibit C).

    2.    "The party who alleges that a controversy … has become moot has the 'heavy burden' of establishing that [the court] lack[s] jurisdiction." *Michigan v. Long*, 463 U.S. 1032, 1042 n.8 (1983); *see also Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 569-70 (1984). Here, for two primary reasons, that burden has not been satisfied: (a) Nix's candidate-related injury-in-fact falls squarely within the "capable of repetition, yet evading review" exception to mootness; and (b) wholly apart from Nix's candidacy, Plaintiffs are all currently suffering from a "denial of equal treatment" injury-in-fact due to the racially discriminatory suspension of Kinston's nonpartisan-elections referendum under the 2006 amended preclearance standard. As explained below, each of these two live injuries is independently sufficient to establish Plaintiffs' continued standing to bring both counts of the complaint.

    a.    Nix's candidate-related injury-in-fact "fit[s] comfortably within the established exception to mootness for disputes capable of repetition, yet evading review," which "applies where '(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration; and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'" *Davis v. FEC*, 554 U.S. 724, 735 (2008). Indeed, the paradigmatic application of this exception is in election cases where, as here, courts cannot (or do not) adjudicate the case before the original election is held but the plaintiff-candidate intends to run again and thus reasonably expects to face the same electoral injury in the future. In *Davis*, for example, the Supreme Court applied the exception to a candidate's campaign-finance challenge, because the claim "could not reasonably be resolved before the election concluded" and the candidate had "made a public statement" in a newspaper "expressing his intent" to run again. *Id.* at 735-36; *see also Krislov v. Rednour*, 226 F.3d 851, 858 (7th Cir. 2000) (applying the exception to a candidate's challenge to ballot-access signature requirements, where the election "ha[d] long since passed" but the candidate "ha[d] articulated an interest in pursuing … other

elective offices"); *see generally Burlington N. R.R. Co. v. Surface Transp. Bd.*, 75 F.3d 685, 690 (D.C. Cir. 1996) (events that will occur in "less than two years' duration ordinarily evade review").

*Davis* is directly on point here: (1) Nix's candidacy injuries evaded review, because the courts failed to adjudicate his claims during the less than two years between the filing of the April 2010 complaint and the November 2011 election; and (2) Nix's candidacy injuries are capable of repetition, because he has publicly expressed his intent to run in the 2013 election for Kinston City Council, *see supra* at 1-2, which once again will be a partisan election due to Section 5's suspension of the nonpartisan-elections referendum.

Accordingly, Nix's candidate-related injury-in-fact is not moot. Furthermore, as previously explained in Plaintiffs' summary judgment reply brief and summarized below, that injury alone establishes Nix's standing to bring both Count I and Count II of the complaint.

As for Count I, the D.C. Circuit has squarely held that Nix's candidate injury confers standing to bring Plaintiffs' enumerated-powers claim, which consists of a two-pronged challenge to *both* the 2006 reauthorization *and* the 2006 amendments. *LaRoque*, 650 F.3d at 780, 795-96; *see also* Complaint ¶ 34. That holding is law-of-the-case. *See* Pltfs. SJ Reply Br. 34. We nonetheless note that it is also plainly correct, because success on *either prong* of that enumerated-powers challenge—including *only* on the prong challenging the 2006 amendments—would lead to the *facial invalidation* of Section 5 under the "congruence and proportionality" test, thereby redressing the injurious suspension of the referendum caused by Section 5. *See id.* 34 & n.8 (citing *Sabri v. United States*, 541 U.S. 600, 609-10 (2004), and *Tennessee v. Lane*, 541 U.S. 509, 530 n.18 (2004)); *see also, e.g., Bd. of Trustees of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 360-62, 372-73 (2001) (reviewing and invalidating *all* of Title I of the ADA, including the statute's provisions that required accessible facilities and prohibited practices with a disparate impact, even though the specific facts of that case implicated *only* the statute's provisions that prohibited intentional discrimination and required reasonable accommodation). Thus, it is clear that, based solely on the D.C. Circuit's standing decision in *LaRoque* and the Supreme Court's mootness decision in *Davis*, this Court must at a minimum adjudicate the merits of Nix's enumerated-powers

3

challenge in Count I to the 2006 version of Section 5, including both the 2006 reauthorization and the 2006 amendments.[1]

As for Count II, Nix's candidate injury also confers standing to bring Plaintiffs' equal-protection challenge to the 2006 amendments, because success on that claim likewise would redress the injurious suspension of the referendum caused by the amended preclearance standard, for two distinct reasons. *First*, the Attorney General clearly applied the discriminatory amended standard when denying administrative preclearance, and he has failed here to meet his burden of proving that he would have made the same decision under the original standard, which means that the amended standard caused the injurious suspension to persist and this Court could redress that injury by invalidating the amended standard and vacating the objection letter. *See* Pltfs. SJ Reply Br. 37-39. *Second*, Nix contends that the discriminatory amended standard is non-severable from the reauthorization of the preclearance requirement, which means that the amended standard caused the injurious suspension to exist and this Court could redress that injury by facially invalidating Section 5. *See id.* 39-44.

In sum, Nix's candidate injury is not moot despite his loss in the 2011 election, and it establishes his standing to litigate the merits of both counts of the complaint.

        b.       Furthermore, wholly apart from Nix's candidacy, Plaintiffs all *continue to suffer* the distinct injury-in-fact that they are being denied "equal treatment" as voters, because the 2006 amended preclearance standard "reli[es] on racial criteria" to impose a "barrier" against the enactment of local election changes that are relatively adverse for voters in the racial minority, and the nonpartisan-elections referendum is suspended until precleared under that discriminatory regime. *See id.* 35-37 (quoting *United States v. Hays*, 515 U.S. 737, 744-45 (1995), and *Ne. Fla. Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993)). Obviously, if that equal-treatment injury-in-fact was sufficient to support Plaintiffs' standing at the outset, then it still exists now and has not

---

[1] Moreover, although unnecessary given the foregoing, there is additional support for Nix's candidate standing to bring the Count I enumerated-powers challenge to the 2006 amendments: namely, the arguments in the paragraph below for why Nix has candidate standing to bring the Count II equal-protection challenge to the 2006 amendments.

4

been mooted by the unrelated event that Nix lost in the 2011 election. And indeed, as previously explained in Plaintiffs' summary judgment brief and summarized below, that injury alone establishes Plaintiffs' standing to bring both counts of the complaint.

*First*, Plaintiffs' equal-treatment injury-in-fact is judicially cognizable. Once the merits of Plaintiffs' claims are accepted as true—as this Court must do for purposes of standing and mootness—there can be no doubt that the amended preclearance standard relies on racial criteria to treat white voters in Kinston differently from, and worse than, black voters in Kinston. Specifically, the amended preclearance standard prohibits changes that would reduce the expected electoral chances of blacks and deters changes that would fail to increase the expected electoral chances of blacks, whereas it allows changes that will fail to increase, or even reduce, the expected electoral chances of whites. *See id.* 22-32. The amended preclearance standard thus gives black voters a race-based preference concerning the enactment of voting laws that are beneficial to their racial group. Whether or not the use of racial criteria to confer such preferential treatment can be constitutionally justified *as a legal matter*, it plainly constitutes an injury-*in-fact* that enables white voters in Kinston to sue when the referendum that they support is suspended until precleared under that discriminatory regime. *See id.* 35-37.

It is wholly irrelevant that some black voters also support the referendum and some white voters oppose the referendum. Under *Hays*, the reason that *every* citizen who resides within a racially gerrymandered district can sue, *regardless* of whether their race is burdened or benefited by the gerrymander, is because they *all* have been denied equal treatment as voters when their jurisdiction's district lines are drawn predominantly based on racial criteria that focus on the effect of those lines on certain racial groups. 515 U.S. at 744-45. Likewise, here, Kinston's citizens, and especially its white citizens, have been denied equal treatment as voters because the amended preclearance standard assesses their jurisdiction's referendum predominantly—indeed, exclusively—based on racial criteria that focus on the adverse effect of that referendum on favored black citizens. Tellingly, it could not seriously be disputed that black voters in Kinston would have an injury-in-fact that entitled them to sue if federal law prohibited local election changes that would reduce (or fail to increase) the expected electoral chances of

5

*white* voters. And the Constitution demands "consistency of treatment irrespective of the race of the burdened or benefited group." *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 227 (1995).

*Second*, Plaintiffs' equal-treatment injury-in-fact is caused by the constitutional violations challenged in each count of the complaint and would be redressed by the relief requested for those counts, for reasons very similar to those discussed above when analyzing causation and redressability for Nix's candidate-related injury-in-fact. *See supra* at 3-4. As for the challenge to the 2006 reauthorization under the first prong of Count I's enumerated-powers claim: The challenged reauthorization caused the unequal treatment of Plaintiffs, because the referendum's suspension under the discriminatory amended preclearance standard never would have occurred but for the reauthorization. And that unequal treatment would be redressed if this challenge were successful, because the reauthorization of the preclearance requirement would be facially invalidated. As for the challenges to the 2006 amendments under the second prong of Count I's enumerated-powers claim and Count II's equal-protection claim: The challenged amended preclearance standard caused the unequal treatment of Plaintiffs, because that discriminatory standard was applied to the referendum, was the basis for denying administrative preclearance to the referendum, and is also non-severable from the reauthorization of the preclearance requirement. And that unequal treatment would be redressed if these challenges were successful, because this Court could either facially invalidate Section 5 or at least invalidate the amended preclearance standard and vacate the objection letter.

In sum, Plaintiffs' equal-treatment injury is not moot because it is wholly independent of Nix's candidacy, and it establishes their standing to litigate the merits of both counts of the complaint.[2]

\* \* \*

Although Nix's loss in the November 2011 Kinston City Council election does not in any way moot this case, it does underscore the harms that can and will result from a delayed determination of

---

[2] Also wholly independent of Nix's candidacy, Plaintiffs continue to have standing as proponents of the referendum whose votes have been nullified by Section 5. *See* Pltfs. MTD Opp. 16-21. To be sure, this Court rejected that contention at the motion-to-dismiss stage, but the D.C. Circuit did not pass on the question when it reversed, and Plaintiffs thus preserve their contention for appeal.

6

Section 5's unconstitutionality. Particularly given the nationwide interests at stake, as reflected by the D.C. Circuit's order drastically expediting briefing and argument in *Shelby County*, Plaintiffs here respectfully renew their request for this Court to enter final judgment as promptly as possible.

| | |
|---|---|
| December 9, 2011 | Respectfully submitted, |
| | /s/ Michael A. Carvin |

Michael A. Carvin (D.C. Bar No. 366784)
Noel J. Francisco (D.C. Bar No. 464752)
Hashim M. Mooppan (D.C. Bar No. 981758)
David J. Strandness (D.C. Bar No. 987194)
JONES DAY
51 Louisiana Ave. NW
Washington D.C.  20001
(202) 879-3939

Michael E. Rosman (D.C. Bar No. 454002)
Michelle A. Scott (D.C. Bar No. 489097)
CENTER FOR INDIVIDUAL RIGHTS
1233 20th St. NW, Suite 300
Washington D.C.  20036
(202) 833-8400

*Attorneys for Plaintiffs*